**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| MANUEL ANDRADE, **)** | |
| **)** | |
| Petitioner, **)** | |
| **)** | |
| v. **)** | Civ. No. 4:22-cv-12237-MRG |
| **)** | |
| MATTHEW DIVRIS, **)** | |
| **)** | |
| Respondent. **)** | |

## <u>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS [ECF. No. 1]</u>

**GUZMAN, J.**

In April 2009, Manuel Andrade ("Andrade" or "Petitioner") was convicted of murder in the first degree for the death of a bystander who was caught in the crossfire of a March 2007 shootout. The Petitioner was also convicted of assault and battery by means of a dangerous weapon, assault with intent to kill, assault by means of a dangerous weapon, and unlawful possession of a firearm at trial by a jury of his peers. In July 2018, Petitioner appealed his conviction and moved for a new trial. The Massachusetts Supreme Judicial Court ("SJC") reviewed Petitioner's appellate claims and his motion for a new trial, and subsequently affirmed Petitioner's 2009 conviction, finding no error. See Commonwealth v. Andrade, 174 N.E.3d 281 (Mass. 2021).

Before the Court is Manuel Andrade's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 raising seventeen grounds for relief.[1] [ECF. No. 1]. For the reasons stated below, the Petition for Writ of Habeas Corpus is **DENIED**.

## I.    BACKGROUND

A federal court must review habeas petitions under 28 U.S.C. § 2254 respecting that the "'state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary.'" Muller v. Goguen, 385 F.Supp.3d 121, 124 (D. Mass. 2019) (quoting Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002)). The presumption of correctness "remains true when those findings are made by a state appellate court as well as when they are made by a state trial court." Id. (quoting Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002) (citations omitted)). In the present case, the SJC summarized the Commonwealth's case as follows:

### A.  Relevant Facts

> At around 1:30 A.M. on March 24, 2007, after [Chiara] Levin and two friends left a club in Boston, they spoke with a group of men standing outside the club, including the defendant, his cousin Tony Andrade, and Samuel Ortiz. The men, whom Levin and her friends had not met previously, invited them to a party in a private home; Levin's group accepted, and Tony drove them to the party.
>
> There were about twenty-five to thirty people at the party. One guest, Jessica Nunez, saw a man, inferentially the defendant, wearing a black fitted baseball cap, a black "hoodie," and glasses approach [Casimiro] Barros and Jason Barbosa, and say, "Y'all Roxbury n****** are nothing but bitches," and also refer to Barbosa as a "bitch ass n*****."
>
> About an hour after Levin and her two friends first arrived, Tony offered to take the group home. Tony, Levin, her two friends, Ortiz, and the defendant went outside, where Ortiz, Levin and her group, got into Tony's Ford Escalade. Before the defendant reached the vehicle, he said something to Tony and then turned and walked back toward the house. Tony got into the driver's seat.

---

[1] The Court notes that in Petitioner's Writ for Habeas Corpus, the Petitioner mistakenly repeated the number 12 in his grounds for relief. The Court treats the claims of relief in the order in which they appear, correcting the numerical error.

Nunez, who was still inside, heard arguing. She saw the defendant throw a plate of food at Barbosa and then pull out a gun. Nunez and other guests reported that they heard gunshots, and that guests ran from the house after the shots. A man ran into the kitchen yelling that "they were shooting" and everyone "needed to get out or we're going to die"; he added that "Spank was buggin'," and "They're shooting in there." Barbosa was shot in the shoulder and fled through the front door. Nunez saw the defendant point a gun at Barros and then run through the front door, with Barros following.

The defendant walked quickly toward Tony's Escalade, looking behind him toward the house and smirking. Ortiz heard someone at the front of the house say, "Pop him," and screamed at the defendant to "watch his back."

Barros, who was being restrained, broke free and moved toward the defendant. By that point, the defendant was near Tony's vehicle. He got out his gun, and Barros did so as well. Both men opened fire. A bullet from the defendant's gun struck a nearby vehicle. Several of the bullets from Barros's gun hit Tony's vehicle; one of them traveled through the front passenger's side door as the defendant tried to flee, and struck him in the buttocks. Another bullet from Barros's gun went through the rear passenger's side window, which shattered, and then hit Levin in the head.

As Levin's friends yelled for Tony to drive Levin to the hospital, he sped away, with the defendant also in the vehicle. After about a minute, the defendant said that he had to get out. Tony stopped the vehicle, and the defendant and Ortiz left. Tony drove to a Boston hospital. On arrival, Levin was unconscious and unresponsive. After approximately two hours of effort, doctors determined that she was "brain dead" and there was nothing further they could do to assist her, so they terminated their efforts and she died.

Nunez drove Barbosa to the same hospital, where he was treated for a collapsed lung. One of the guests who had been at the party when the shootings took place called the defendant. He told her, "You didn't see anything, right?" and said that she should tell the other people with whom she had been there that they had not seen anything either.

Andrade, 174 N.E.3d at 291–93 (footnotes omitted).

## B. Procedural History

Petitioner was convicted by jury trial of first-degree murder, assault and battery by means of a dangerous weapon, assault with intent to kill, assault by means of a dangerous weapon, and unlawful possession of a firearm in April 2009. [ECF No. 2 at 4]. Petitioner appealed in a timely manner, then filed a post-verdict motion to reduce the verdict. [ECF No. 2 at 5]. When this motion was denied, Petitioner filed another notice of appeal. [Id.] In July 2018, Petitioner filed a motion

for new trial with the SJC. [Id.] The SJC remanded the motion to the trial court, which declined to act on the motion, sending it back to the SJC. [Id.] The SJC affirmed the convictions in October 2021. [Id.] This Court now reviews Petitioner's Petition for a Writ of Habeas Corpus, which was filed on December 30, 2022. [ECF No. 1]. Respondent filed an opposition to the Petition on September 25, 2023. [ECF No. 24]. Petitioner filed a response to the opposition on January 19, 2024. [ECF No. 29].

## II.     LEGAL STANDARDS

"The writ of habeas corpus is an extraordinary remedy that guards only against extreme malfunctions in the state criminal justice systems." Rivera v. Kelly, 763 F.Supp.3d 105, 121 (D. Mass. 2025) (quoting Watkins v. Medeiros, 36 F. 4th 373, 384 (1st Cir. 2022)). The merits of a habeas petition must be addressed by the standards outlined in 28 U.S.C. § 2254(d), which place the burden on Petitioner to prove that the state court's decisions as to all grounds were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Shinn v. Ramirez, 596 U.S. 366, 375 (2022) ("To respect our system of dual sovereignty . . . the availability of habeas relief is narrowly circumscribed."). For a state court decision to be contrary to Federal law, "it either applies a test that is inconsistent with one announced by the [Supreme] Court or reaches the opposite conclusion on materially indistinguishable facts." Rashad, 300 F.3d at 34–35 (quotation marks and citation omitted). Meanwhile, a decision is unreasonable where "the state court identifi[ed] the correct governing legal principle . . . but unreasonably applie[d] that principle" when viewed objectively. Williams v. Taylor, 529 U.S. 362, 365 (2000). Mere error by the state court is not enough to sustain a petition. McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002).

The Supreme Court has "recognized that federal habeas review cannot serve as a substitute for ordinary error correction through appeal . . . [Rather,] . . .[t]he writ of habeas corpus is an extraordinary remedy that guards only against extreme malfunctions in the state criminal justice systems." Shinn, 596 U.S. at 377. The state court decision must have "some increment of incorrectness beyond error" that is "great enough to make the decision unreasonable in the independent and objective judgment of the federal court" that is reviewing the habeas petition. McCambridge, 303 F.3d at 36 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2nd Cir. 2000)). Indeed, "[t]he standard for evaluating the state court's decision is 'highly deferential,' with 'the presumption that state courts know and follow the law' and the requirement that the decisions of the state court 'be given the benefit of the doubt.'" Simpson v. Spencer, 372 F. Supp. 2d 140, 145 (D. Mass. 2005) (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

A petitioner cannot obtain relief unless he "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A) (stating rule as to those "in custody pursuant to the judgment of a State court"). This exhaustion doctrine exists to foster "respectful, harmonious relations between the state and federal judiciaries." Wood v. Milyard, 566 U.S. 463, 471 (2012). To meet the doctrine's requirement, a "petitioner must demonstrate that he tendered each claim 'in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997) (quoting Scarpa v. Dubois, 38 F.3d 1, 6 (1st Cir. 1994)). A habeas petitioner cannot continue to litigate a petition containing any unexhausted claims. Id. at 261; see Rose v. Lundy, 455 U.S. 509, 522 (1982). However, "[a]n application for writ of habeas corpus may be denied on the *merits*, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (emphasis added). Where a habeas petitioner's unexhausted claim is "patently

without merit, . . . a federal court [may], in the interests of judicial economy, . . . dispose of that claim once and for all." Coningford v. Rhode Island, 640 F.3d 478, 483 (1st Cir. 2011).

### III.    DISCUSSION

#### A.    Asserted Inconsistencies

##### i.    Inconsistency of Verdicts

In his first ground for relief, Petitioner complains of inconsistencies between two of his verdicts: first-degree murder and assault with intent to kill. [ECF No. 1 at 5]. Petitioner argues that these verdicts cannot coexist since one requires a jury's finding of malice (first-degree murder) while the other requires a jury to find no malice (assault with intent to kill). [Id.] Petitioner exhausted this ground by raising it in his appeal before the SJC. Andrade, 174 N.E.3d at 293.

In Andrade's appeal, the SJC outlined that "verdicts are factually inconsistent when, 'considered together [they] suggest inconsistent interpretations of the evidence presented at trial,'" while "legally inconsistent verdicts are 'verdicts of guilt involving mutually exclusive crimes, where it is impossible for the Commonwealth to prove the elements of both offenses.'" Andrade, 174 N.E.3d at 294 (quoting Commonwealth v. Resende, 65 N.E.3d 1148, 1154 (Mass. 2017)). In this case, the jury evaluated each indictment separately, reaching different factual conclusions with respect to the different victims. Id. The SJC further specified that "it is 'not necessary that the verdicts be consistent on the separate indictments.'" Id. (quoting Commonwealth v. Scott, 245 N.E.2d 415, 418 (Mass. 1969)). However, "even if the verdicts were inconsistent, the Supreme Court and [the First Circuit] have clearly stated that inconsistencies are no basis for setting aside a conviction." U.S. v. Crochiere, 129 F.3d 233, 239 (1st Cir. 1997) (citing United States v. Powell, 469 U.S. 57, 105 (1984)). The SJC's conclusion aligns with established federal law, therefore the Court sees no clear error or unreasonable conclusion in the SJC's analysis. See 28 U.S.C. §

2254(d); Andrade, 174 N.E.3d at 294–95. Accordingly, Petitioner's first ground for habeas relief is **DENIED**.

### ii. Inconsistencies Between Petitioner's Trial and Barros's Trial

In Petitioner's third ground for relief, he argues that in violation of his rights to due process, the Commonwealth relied on differing legal theories between his trial and co-defendant Casimiro Barros's trial. [ECF No. 1 at 8]; Andrade, 174 N.E.3d at 295. Specifically, Petitioner contends that the Commonwealth's argument at Barros's trial involved Petitioner firing the first shot inside the house and Barros beginning the shoot-out outside of the house where Levin was struck At Petitioner's trial, the Commonwealth argued that Petitioner fired the first shot inside then lured Barros outside and shot at him. Id.

In reviewing this argument on appeal, the SJC cited the standard in Commonwealth v. Keo, which requires an inconsistency at the core of the prosecutor's case against defendants for the same crime to amount to a due process violation. Id. (citing Commonwealth v. Keo, 3 N.E.3d 55, 64 (Mass. 2014)). In both trials, the Commonwealth's theory centered on the same events where Petitioner initiated the shooting inside the house, then both parties shot at each other outside where Levin was hit. Id. Applying Keo, the SJC reasonably determined that the "alleged inconsistency was not so 'core' to the case as to constitute a violation of due process." Andrade, 174 N.E.3d at 296.

In Housen v. Gelb, the petitioner asserted a comparable claim, contending that "the prosecution asserted inconsistent theories of liability at his and his co-defendant's trial, in violation of his due process rights." 2013 WL 1694799, at *5 (D. Mass. Apr. 17, 2013). The court in Housen agreed with the SJC that "'two rational conclusions based on ambiguous evidence will not constitute a due process violation,' and that 'this is especially true with respect to cases against co-

defendants based on a theory of joint venture . . . , where it cannot be determined which of the defendants fired the fatal shot.'" Id. (quoting Commonwealth v. Housen, 940 N.E.2d 437, 444 (Mass. 2011)). Where such factually similar precedent is available and Petitioner has failed to present applicable Supreme Court precedent indicating a contrary result, this Court aligns with Housen and the SJC. Id.; [ECF No. 2 at 35–41]. Petitioner has not demonstrated the SJC's determination was unreasonable or contrary to established federal law, therefore, Petitioner's third ground for habeas relief is **DENIED**.

### B. Evidentiary Rulings

In grounds five, eight, ten, twelve, thirteen, and fifteen of his Petition, Petitioner contends that multiple violations of his due process rights occurred through improperly excluded evidence, improperly admitted evidence, and insufficient evidence. [ECF No. 1 at 21, 23–26]. This Court reviews the trial court's evidentiary rulings for abuse of discretion. See McDonough v. City of Quincy, 452 F.3d 8, 19 (1st Cir. 2006). "A misbegotten evidentiary ruling that results in a *fundamentally unfair* trial may violate due process and, thus, ground federal habeas relief." Coningford, 640 F.3d at 484 (citing Montana v. Egelhoff, 518 U.S. 37, 43 (1996)) (emphasis added). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Gomes v. Silva, 958 F.3d 12, 23 (2020). To amount to a constitutional violation, "the state evidentiary error must so infuse the trial with inflammatory prejudice that it renders a fair trial impossible." Id. at 24.

Under this standard, courts in the First Circuit consider whether there is "any 'clearly established' Supreme Court precedent" contrary to the evidentiary ruling below. Perkins v. Alves, No. 1:21-CV-12037-ADB, 2023 WL 5200192, at *3 (D. Mass. Aug. 14, 2023) (quoting Gomes, 958 F.3d at 25). While Petitioner presents case law establishing the right to present relevant

evidence, such as Holmes v. South Carolina, 547 U.S. 319 (2006), the relevance of that evidence is still at the trial court's discretion. [ECF No. 2 at 44, 46–48]; see, e.g. Chimeno v. Pion, 129 F.3d 1252 (1st Cir. 1997) ("Determinations concerning the admissibility as well as the exclusion of evidence are left to the sound discretion of the trial court, and this court will reverse only if the district court abused its discretion.").

In reviewing this claim on appeal, the SJC considered each ground individually, noting the deference given to trial courts and reiterating the lack of error. Andrade, 174 N.E.3d at 297–302. Like the SJC, this Court finds no abuse of discretion by the trial court in its evidentiary rulings and thus no due process violation to warrant habeas relief. Id. Where Petitioner has not otherwise demonstrated the SJC's determination was unreasonable or contrary to established federal law, Petitioner's fifth, eighth, tenth, twelfth, thirteenth, and fifteenth grounds for habeas relief are collectively **DENIED**.

## C. **Jury Instructions**

In his fourth ground for relief, Petitioner argues his due process rights were violated when the trial court judge told jurors that Barros was already tried for his role and provided the jury with exhibits from that trial. [ECF No. 1 at 10]. In his second and sixth grounds for relief, Petitioner argues that the trial judge improperly instructed the jury on two issues: (1) first-degree murder regarding liability construction in a "shootout," and, (2) on the instruction of self-defense, where the judge specified that self-defense was not at issue in this case. [ECF No. 1 at 7, 22]. "As a general rule, improper jury instructions will not form the basis for federal habeas relief." Hardy v. Maloney, 909 F.3d 494, 499 (1st Cir. 2018) (quoting Niziolek v. Ashe, 694 F.2d 282, 290 (1st Cir. 1982)). State law typically governs jury instructions, and an "error under state law is not a basis for habeas relief." Id. (quoting Estelle v. McGuire, 502 U.S. 62, 71–72 (1991)).

9

To succeed on a due process claim under Petitioner's circumstances, he must show that the error "so infected the entire trial that the resulting conviction violates due process." Id. (citations omitted). In its analysis, the SJC thoroughly considered each ground and held that there was no error. Andrade, 174 N.E.3d at 302–04. This Court finds the SJC's conclusion reasonable and not contrary to the "general rule" established in federal law. See Hardy, 909 F.3d at 499 ("[I]mproper jury instructions will not form the basis for federal habeas relief."). Therefore, Petitioner's second, fourth, and sixth grounds for habeas relief are collectively **DENIED**.

### D.  Courtroom Security

In his eleventh ground for relief, Petitioner contends that the partial courtroom closure during his trial violated his right to a public courtroom since the court required all spectators to show identification and sign in. [ECF No. 1 at 24]. The SJC determined that the "security conditions imposed were minimally invasive and were tailored to the issue of witness intimidation." Andrade, 174 N.E.3d at 304.

Federal precedent supports the SJC's holding that "requiring public spectators to present identification before entering the courtroom did not violate Sixth Amendment right to a public trial." Bucci v. U.S., 662 F.3d 18, 23 (1st Cir. 2011) (citing United States v. DeLuca, 137 F.3d 24, 32–35 (1st Cir. 1998)). The SJC's conclusion that Petitioner's Sixth Amendment rights were not violated is a reasonable determination of the facts, and not contrary to federal law warranting habeas review. See 28 U.S.C. § 2254(d). As a result, Petitioner's eleventh ground for habeas relief is **DENIED**.

### E.  Improper Remarks by Prosecutor

In his ninth ground for relief, Petitioner alleges that during closing arguments, the prosecutor's argument was improper and thus violated his due process rights. [ECF No. 1 at 23].

The criticized remarks were both a distance comparison of the jury's placement to where the victim was standing and a statement that Petitioner "opened fire on the man he had just insulted inside." Id. In reviewing the claim on appeal, the SJC held that while some of the prosecutor's closing remarks could be considered inflammatory, "they were limited, not repeated, and the judge properly instructed the jury that closing arguments are not evidence." Andrade, 174 N.E.3d at 311. This Court agrees with SJC's reasonable conclusion. Further, the few improper comments did not rise to the requisite federal standard of "infect[ing] the trial with unfairness as to make the resulting conviction a denial of due process." Taylor v. Medeiros, 983 F.3d 566, 572 (1st Cir. 2020) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). Accordingly, Petitioner's ninth ground for habeas relief is **DENIED**.

### F. Consecutive Sentences

In his seventh ground for relief, Petitioner argues that his consecutive sentences violate his due process rights and right to be free from cruel and unusual punishment. [ECF No. 1 at 22]. Specifically, he contends that where the crimes flowed from one chain of events, his sentence for first-degree murder should not be followed by "from and after" sentences on the other convictions. Andrade, 174 N.E.3d at 305. Additionally, Petitioner contends that since the offenses of murder and assault with intent to kill arose from the same fired bullet, the fact that he was convicted on both violates his protections against double jeopardy. Id. In considering this argument on appeal, the SJC reasoned that "two offenses . . . 'are not the same within the meaning of the double jeopardy clause merely because they stem from the same conduct.'" Id. (quoting Commonwealth v. Woods, 607 N.E.2d 1024, 1030 (Mass. 1993)). The SJC also specified that while five of Petitioner's offenses were related, they "consisted of distinct elements; no conviction was a lesser included offense of any other." Id.

11

Federal law also follows this logic. In U.S. v. Talavera, the court held that since each count clearly required proof of facts that the other did not, "[the] contention that consecutive sentences imposed under the two different counts violated Double Jeopardy lack[ed] merit." 668 F.2d 625, 632 (1st Cir. 1982). Accordingly, this Court finds the SJC's reasoning sound where it determined that since Petitioner's convictions have separate elements, no double jeopardy or due process violation occurred in the imposition of consecutive sentences. Id. Therefore, Petitioner's seventh ground for habeas relief is **DENIED**.

### G. Remaining Grounds for Relief

#### i. Unexhausted Claim.

In his sixteenth ground for relief, Petitioner argues that the state court violated his due process rights by declining to act when he raised his motion for new trial. [ECF No. 1 at 26]. Petitioner did not technically present this alleged due process violation to the SJC. See Andrade, 174 N.E.3d. This claim was raised *in response* to the SJC's 2021 decision and thus could not have been presented before the State's highest court.[2] Id. "It is well-established that claims presented for the first time in a habeas petition . . . are unexhausted." Monteiro v. Massachusetts, 2024 WL 4008535, at *3 (D. Mass. Aug. 30, 2024). Because this claim is unexhausted, it cannot serve as the basis for habeas relief. See Meas v. Demoura, 444 F.Supp.3d 291, 298 (D. Mass. 2020) ("A habeas petitioner seeking relief pursuant to § 2254 must first exhaust all claims by presenting them to a state court."). Petitioner's sixteenth ground for habeas relief is therefore, **DENIED**.

---

[2] The Court notes that the SJC did address the issue of Andrade's pending motion for a new trial and the relevant claims raised in the motion as well as the trial court's denial, in its final order. The issue of whether the state court's denial of the motion constitutes a due process violation however is presented to this Court without prior consideration from the SJC.

12

*ii.*     *Actual Innocence.*

In his fourteenth ground for relief, Petitioner argues his actual innocence. [ECF No. 1 at 11]. Claims of actual innocence, even when based on newly discovered evidence, are not grounds for habeas relief. See e.g. Herrera v. Collins, 506 U.S. 390, 416–17. Accordingly, Petitioner's fourteenth ground for habeas relief is **DENIED**.

*iii.*     *Cumulative Impact.*

In his seventeenth ground, Petitioner demands relief based on the cumulative impact of errors made in his case. [ECF No. 1 at 11]. Where Petitioner's other grounds for relief were denied and this Court found no error by the SJC, any cumulative impact argument is moot, and this claim fails as well. See United States v. Acevedo, 882 F.3d 251 (1st Cir. 2018) ("Our review of the individual alleged errors reveals that there were either no errors or . . . we found that any error on the part of the District Court in admitting that evidence was harmless."); Avila v. Clarke, 938 F.Supp.2d 151, 176 (D. Mass. 2013) (finding that where the SJC determined the trial judge "did not commit the errors claimed, [the SJC had] no reason to consider the cumulative effect" and the Petitioner failed to "state a claim for habeas relief on the ground of cumulative error."). Accordingly, Petitioner's seventeenth ground for habeas relief is **DENIED**.

**IV.     CONCLUSION**

For the reasons stated above, the Petition for Writ of Habeas Corpus, [ECF No. 1], is **DENIED.** The case is therefore **DISMISSED**.

**V.     CERTIFICATE OF APPEALABILITY**

The statute governing appeals of final orders in habeas corpus proceedings provides that an appeal is not permitted "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue "only if the

applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a "substantial showing," a petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quotation marks and citation omitted). "To meet the debatable-among-jurists-of-reason standard the petitioner must prove 'something more than the absence of frivolity or the existence of mere good faith.'" United States v. Cintron, 281 F. Supp. 3d 241, 242 (D. Mass. 2017) (quoting Miller-El v. Cockrell, 537 U.S. 322, 338 (2003)). In ruling on an application for a COA, a district court must indicate which specific issues satisfy the "substantial showing" standard. 28 U.S.C. § 2253(c)(3).

The Court denies the COA with respect to all grounds because the Petitioner cannot demonstrate that reasonable jurists would debate whether the SJC's application of Supreme Court precedent or federal law was objectively unreasonable or was based on unreasonable factual determinations. See 28 U.S.C. § 2254(d)(1)-(2). Moreover, Petitioner has not made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the Court declines to issue a COA.

**SO ORDERED.**

Dated: March 27, 2026

  /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge

14